In this case, dates are very important. microphone if you would, please, so we can hear you better. timeline of events that are significant in this appeal. The first event is October 28th of 2016, when this court issued its Bell decision, holding that Missouri second-degree robbery does not necessarily require the use of violent force described in Johnson, and therefore, it is not a crime of violence. After that October 28th decision, the government did not file a petition for rehearing. There was no petition for rehearing filed, and the mandate issued December 21st of 2016. Then on January 3rd, 2017, Mr. Dunlap committed his crimes, which were bank robbery and felon in possession of a firearm. If we fast forward a little bit, not quite a month after Mr. Dunlap committed his crimes, the Swopes case was being litigated, and on January 31st of 2017, the defendant in Swopes asked to do some supplemental briefing and filed the brief on that January 31st date. February 17th of 2017, the government filed its supplemental briefing in Swopes, and that is when they argued that Bell was wrongly decided. And so, that was a little over a month after Mr. Dunlap had committed his crimes. On March 10th of 2017, the Swopes panel decision was issued, and that concluded that Bell was controlling and vacated Swopes' sentence on the ground that second-degree robbery was not a violent felony under the circuit precedent of Bell. On May 19th, a little over five months after Mr. Dunlap committed his crimes, the government filed its petition for rehearing in Swopes. That was granted June 17th of 2017 for rehearing in Bonk. January 9th of 2018, while we were waiting for a decision, the final PSR came out in Mr. Dunlap's case. For count one, the maximum was 20 years, and for count two, the maximum was 10 years. There was no mandatory minimum sentence required. The guidelines were 51 to 63 months, and those were grouped. And so, because count one and count two are grouped, if there was a change to count two, which I'm foreshadowing for later, that will also affect count one. So that was 51 to 63 months. On March 8th, 2018, the party showed up for a sentencing in front of the district court, and the government orally moved in court that day to continue the sentencing in hopes that we would have a decision from this court in Bonk and Swopes, and the government anticipated that Swopes may overrule Bell, which did happen 21 days later on March 29th. And so, a second PSR addendum for Mr. Dunlap was created. Well, I just wanted to say, we've read the briefs, of course. We know the procedural history, and we granted our argument here so you could address the legal issues that raised some issues under the due process clause and so forth. So we've taken four minutes on the procedural history, but we might want to go to the legal issues before too long. Yes, Your Honor. The issue is whether it was, whether the district court violated Mr. Dunlap's due process rights when it retroactively applied the Swopes and Bonk decision. And there are three reasons why that was. It was a due process violation because Swopes made the punishment for the instant offenses more burdensome after they were committed. And we have to look at the law at the time that the offense was committed, which was January 3rd, 2017. It deprived Mr. Dunlap of the defense that he did not have three ACCA predicate offenses at the time of the instant offenses. And Swopes was an unforeseeable judicial interpretation at the time the instant offenses were committed. And the reason why I was going through the timeline like that again is because the government is arguing that the Swopes decision was not unforeseeable and indefensible. And we believe that it was unforeseeable because of the fact that Bell had been issued just prior to the fact that Mr. Dunlap had committed his crime. So just prior to that, and the fact that the government did not file a petition for rehearing. And so the mandate in Bell had issued by the time he had committed his offenses. And so when we fast forward- What about the fact that the en banc court, you might say, is a higher level of authority than the panel decision in Bell? Is it really unexpected and indefensible if an en banc court or the Supreme Court overrules a panel decision? Do you have any authority on that, or any thoughts on it? Well, Your Honor, I believe that the Eighth Circuit doesn't have to be the Supreme Court for it to be precedent. I think that the Eighth Circuit, the Circuit Courts of Appeal are precedent as well. I think that if the facts were different in this case, and if the government had filed for petition for rehearing in Bell, and if this court was considering taking that en banc, or they had said, yes, we will take it for rehearing en banc. Then I think we could say, well, at the time he committed his crimes, we did not have circuit precedent because it was being questioned since the court had accepted it for rehearing. But because that was not the procedural posture, I don't think we can say that. And so because the mandate in Bell had issued with no petition for rehearing by the government, I think that we can say that was actual precedent. And that is why I also was focusing on the specific language in the Swoap's panel decision, because Your Honor and Judge Shepard, in that per curiam opinion, specifically said that Bell was circuit precedent. And so due process is about notice, and it's about notice at the time that you commit your offense. And Bowie has great language about that, and so does Davis. And the issue is, if a judicial construction, and this is language from Bowie, if a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct and issue, it must not be given retroactive effect. And Your Honor- Suppose in this case, suppose the Supreme Court had taken a case from some other circuit at a later time and come out the other way from Bell. Would that, in your view, would it violate due process then to apply that to your client? Your Honor, is your- Same. So is your question, if the Supreme- Say Swoap's had been a Supreme Court decision instead of a non-bank decision, same timing, same issue, it just came up from some other circuit. I would say, and again, that's why I feel like the timeline is so important. If prior to January 3rd, 2017, there was this litigation happening, then I would say that you can't rely on something that's undecided. But once it has been decided, and so Your Honor, that's why, I'm sorry, did I interrupt you? No, I think I hear what you're saying, but- And so, Your Honor, I talked about- It's only been decided by a panel of the eighths, a divided panel of the eighth circuit, though. And I mean, I guess it doesn't matter whether it's divided or not, but it was just a panel decision of the eighth circuit. And I think that ordinary- But the question is whether that's enough to sort of guarantee your client what the rule of law is, or whether it's always subject to revision by the en banc court and the Supreme Court. And Your Honor, I think that if he had committed his crimes after February 17th, 2017, when the government did its supplemental briefing in swopes, if he had committed his crime while that briefing was happening, I think we could argue that things were in flux. We didn't know how things were going to turn out, because the government was now arguing that Bell was wrongly decided. But because the government did that after Mr. Dunlap committed his crimes, I just don't know how we could say he had fair notice. We presume that people out in the world know the law, and so, I mean, that was the law at the time. And so, Your Honor, I did focus in my brief on a couple cases- I'm not sure whether it was the Eighth Circuit or another circuit. Well, that's interesting. And so, Bell mentioned the fact that the Fourth Circuit had held very similarly. And so, we have some Eighth Circuit cases, and the government actually referred to the Lyons case, L-Y-O-N-S, in its sentencing memorandum. And I talked about Lyons in the brief. In Lorsan and Lyons and Kendall, there was no Eighth Circuit case on point at that time. And so, for example, if I talk about Lorsan, the Eighth Circuit hadn't ruled whether or not escape was a crime of violence. But the Fourth had, the Fifth had, the Sixth had, the Tenth. And so, if there's nothing on point in the Eighth Circuit, but other circuits have said it is a crime of violence, I think it's a lot harder to be arguing that something is indefensible when other circuits have ruled that something is a crime of violence. But we didn't have that here. We had Bell. Furthermore, we had the Fourth Circuit Gardner decision that had come out prior to Bell and is referenced in Bell. So we had another circuit that you could rely on. And so, the sort of, there weren't circuits out there that were going the opposite way. And so, I think it was fair notice to rely on Bell and to rely on the Fourth Circuit Gardner decision at the time. If there aren't, go ahead. I do have one other question. Now, this concept or this principle that you're arguing, does it lose some force when we're talking about the construction of black letter law? I mean, you know, the ACCA and Missouri Second Degree Robbery Statute, both were around even before Bell. That make a difference?  I think the important thing is that- Guess what I'm saying, because, you know, Swope 2 determined the final meaning of that. Shouldn't that be anticipated, that that could happen when we're construing statutes? I don't think it is. I think that when you look at 924E and the fact that robbery is not enumerated there, and you have to look at the force clause, and the fact that Johnson came out in 2010 and kind of gave us a physical force definition to use, a violent force definition, and when that exact analysis was used in Bell for physical force, and those are identical terms for those two sections, I think that a defendant should be able to rely, again, on Bell and on the Fourth Circuit. This whole area of law has been in flux for a while, and I think that the best that people out in the world can do is take the fair notice that's been given to them, and in this case, back to that language in Bowie, it says, if the statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct, and Bell had been expressed. If there are no other questions, I will reserve my one minute and 12 seconds. Very well. You may reserve. Mr. Kelleher, we'll hear from you. Thank you, Your Honor. Good morning, Maid Police Court. I'm Jim Kelleher, appearing on behalf of the United States. It's the government's position that Mr. Dunlap's argument has two fundamental flaws and his claim that his right to due process was violated. First and foremost, or maybe not foremost because I think this is the weaker of the two arguments, the Bell opinion did not extend to the Armed Career Criminal Act. The Bell opinion, by its terms, was restricted to the sentencing guidelines, section 4B1.2. Now, I understand, and perhaps a small percentage of federal practitioners who operate in this area of law probably understood Bell to mean that sooner or later a panel of this court was obliged to find that Bell would also apply to section 924E. But at the time of the offense, the defendant's reliance on Bell seems ill-founded in as much as, strictly speaking, Bell did not apply to his determination of whether or not he was an armed career criminal. And again, I recognize that Bell necessitated the decision in SWOPS 1. So that's your weaker argument? Yes. Because it was a foregone conclusion, basically? It was, and again, I guess it depends on— Why do you want to lead with that argument, then? Because it's out there. And I think if you're going to say I relied on a decision of a split panel of the Eighth Circuit, at the very least, that opinion should have at least contemplated precisely what it is that ultimately you were going to complain about. Except you're at the same time saying it was a foregone conclusion that it would dictate SWOPS. So what was so unreasonable about him relying on that foregone conclusion, I guess, would be— Well, again, we're adopting the legal fiction that Mr. Dunlap was an avid reader of Eighth Circuit opinion-making at the time. Don't all these ex post facto due process cases adopt that? They do, Your Honor. But I do believe that if you're going to rely on a decision, that decision should directly apply to the issue at hand. And again, I'll move on to my second argument because, again, I think that is the weaker of the two arguments. But as the Court pointed out, the decision in SWOPS 2 should not have been unforeseeable. Far from it, in fact. In terms of what this Court does, there is probably nothing more tenuous than issuing a split decision in a case that was looking at these particular issues. At the time, I think aspects of the armed career criminal statute were probably among the most hotly contested issues that were before not only this Court but courts across the United States. And Your Honor, Judge Colleton made an excellent point with regard to litigation going on in other districts. And, in fact, Stokeling, which I think could be regarded as the final word in whether robbery is, in fact, a violent felony under 924E, was being actively litigated. Mr. Stokeling was sentenced on April 28th of 2016. And at the time of Mr. Dunlop's bank robbery was pending before their Court of Appeal. That decision, of course, didn't come out until April of 2017. And the United States Supreme Court didn't issue its opinion until January 15th of 2019. But, nevertheless, this issue was not only an issue before this Court, but it was an issue before other courts in closely analogous cases. When we look at the line of cases beginning with Bowie, in order to find that a person properly relied on an issue being, or his due process rights were violated by an unexpected and indefensible act of a court, we're looking at cases that go far beyond what we see in this particular case. In Bowie, we have a ruling by the South Carolina Supreme Court that was clearly unforeseeable and appears, I don't think I speak out of turn by saying it, it appears to have been completely driven by race or racism. We move on to Rogers v. Tennessee, and in that case, the Tennessee Supreme Court decided that they would no longer abide by the one-year-and-one-day rule in their homicide prosecutions. But, nevertheless, the Supreme Court, with stakes being considerably higher than they are in this case, said that that one-year-and-one-day rule only had the most tenuous foothold, despite the fact that it had been apparently the de facto law for decades. In evaluating a case similar, although not precisely the same as this one, this court, United States v. Pate, looked at alleged due process violation when a person was determined to be an ACCA by virtue of a flight conviction. And in it, the court noted that, as part of its opinion, that even before Sykes, they addressed Tyler, which apparently had held that flight was not a violent felony. But the court did note that one member of the court asserted that Tyler was wrongly decided. And again, in this case, coming back to this case, when you read Bell, when you read that opinion, not only do you have to read the majority opinion, the two-to-one majority opinion, but the reasoning set forth by Judge Grunder in dissent, I think, was compelling. And I think it was readily foreseeable that, given the split in that panel, that that issue would be revisited and in relatively short order. And given the opinion, or the dissenting opinion, and given the rationale, and I think it was fairly well thought out, I don't think it would be unforeseeable for this court to come back and essentially adopt that dissent. And ultimately, that's precisely what the court, en banc, did in an eight-to-one decision. It was clearly foreseeable that Swopes II would be decided the way it was. And in fact, I would note to the court that this defendant pled guilty on November 15th of 2017, some four months before Swopes II was decided, and that out of an abundance of caution, the parties advised Mr. Dunlap of the penalties for both being a felon in possession of a firearm without the ACCA enhancement, as well as the potential penalties if Bell and Swopes were overturned. The time is when he committed the crime, not when he was pled. That's true, and I don't suggest anything differently. What I'm saying, though, is the relevance is that it was foreseeable. As of the time of the guilty plea? Yes, even though Swopes had not been decided. But that's not the relevant date. I understand that, but the relevant dates, if you will, is a range of dates between Bell and Swopes II being decided. And what my position is, the parties certainly understood that Bell was on very unsteady ground, and there was a possibility that it would be overturned. I just don't understand how that gets you very far, if you can say, as of the date of the guilty plea, everybody understood that. When I thought the question is whether everybody should have understood that at the time he committed the offense. I don't think anything had changed between the time of the offense and the guilty plea in terms of what the law was. Oh, okay. I thought she said that the proceedings had evolved in Swopes. They had to a certain extent, but there still was no decision. You said nothing had changed. Well, certainly the law had not changed. The procedural status of the case may have certainly changed, and obviously it did. But Swopes was being actively litigated at the time of the crime as well. They hadn't quite got into briefing the new allegation, but it was out there. And I think at bottom, at the very least, we can say that Swopes II was clearly foreseeable from the time Bell was written. Bell, if anything, was the departure from what this court had previously held. Bell was kind of the outlier. The government didn't even petition for rehearing in Bell. It did not. She makes that point and says, well, if it was so obviously wrong, I guess the implication is then. And I can't speak for my colleagues in St. Louis. I can't speak to that decision. No, no, I don't think her point is whether you made a good or bad decision. It's that can't a guy rely on the fact that the government let Bell go? And again, I think strictly speaking, it's not so much a matter of reliance. It's a matter of whether or not it's foreseeable that that opinion may be overruled. And again, in considering my argument here, obviously there are considerations of detrimental reliance, but to make a colorable argument of detrimental reliance, you must prove that the person knew about the opinion and then acted to his detriment by virtue of that opinion. And I clearly don't think that's the case here. The only thing that needs to be decided is whether or not it was foreseeable that a split decision by a panel of this court would someday be overruled. And given the fact that that opinion was on very shaky ground from the outset, I think it's impossible to assert with any credibility that it was unforeseeable that it would ultimately be reversed by either this court en banc or the United States Supreme Court. Certainly, and again, Your Honor raised the question of what would have happened if the Supreme Court had done this. The Supreme Court did, in essence, come to exactly the same conclusion in Stokelyne, which was decided in January of 2019. So Stokelyne, again, I think is the final word on this. And again, the decision in Stokelyne was no less foreseeable than the decision in Swopes II. I will yield my remaining three minutes and 40-some-odd seconds to the court. Thank you. Very well. Would you care to make rebuttal, Ms. Meinrich? Yes, Your Honor. Mr. Kelleher mentioned that it was obvious that Swopes would be revisited in relatively short order. I just want to remind the court that we did show up for sentencing on March 8th. We were ready to go, and Swopes had not been decided. That was over a year after my client committed his crimes. His guidelines were 51 to 63 months. And after that addendum was done, after Swopes, his guidelines went to 188 to 235 months. That is more than basically triple the low end of the guidelines prior to that. And I think that that's part of our due process argument as well, that when you commit your crime, you should have fair notice of the penal consequences as well. And I think that Bell, by its holding, gave him fair notice at the time of his crime of those penal consequences. And so I think that he should have had to suffer the consequences that were in place with the Bell decision when he committed his crime. Thank you. Very well. Thank you for your argument. And thank you, by the way, for accepting the appointment under the Criminal Justice Act. The court appreciates your service. Thank you, Mr. Kelleher. The case is submitted, and the court will file an opinion in due course.